IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

LINDA I. VALERINO, *et. al.*,        )
                                     )
      Plaintiffs,                    )
                                     )
         v.                          )      1:11cv1124 (JCC/JFA)
                                     )
ERIC H. HOLDER, JR.,                 )
                                     )
      Defendant.                     )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiffs' Motion to Amend Complaint [Dkt. 46], Plaintiffs' Motion to Certify Class Action [Dkt. 65], and Defendant's Motion to Strike [Dkt. 73]. For the following reasons, the Court will grant Plaintiffs' Motion to Amend Complaint, deny Plaintiffs' Motion to Certify Class Action, and deny Defendant's Motion to Strike as moot.

### I.  Background

#### A. Factual Background

Linda I. Valerino, Dora M. Alvarado, Jeffrey L. Bohn, Margarita V. Serna, and Tam M. Wyatt bring this Title VII class action against United States Attorney General Eric H. Holder, Jr., alleging that the Merit Promotion Process by which the United States Marshals Service (USMS) selects internal applicants for promotions systematically discriminates against women and prior discrimination

1

complainants.  Plaintiffs now move this Court to certify a plaintiff

class consisting of:

> All current and former U.S. Marshals Service
> employees who have applied for promotion under
> the Merit Promotion process from March 2006 to
> December 20, 2010 who are either (a) female, or
> (b) prior EEO participants, meaning that they
> had made an EEO complaint prior to the time of
> their promotion application.

(Mot. to Certify Class [Dkt. 65] (Pls.' Mot.) at 2.)

i.  <u>USMS Policies</u>

The USMS, as a component of the U.S. Department of Justice

(USDOJ), abides by the EEO policies of the USDOJ.  USDOJ's current

EEO Policy provides that

> Management within every organization and at all
> levels will take effective actions to eliminate
> any internal policy, practice, or procedure
> which results in discrimination on the basis of
> race, color, religion, national origin, sex . .
> . or any other non-merit factor. The Department
> is committed to assuring that questions or
> complaints of discrimination and sexual
> harassment are promptly and thoroughly
> investigated and resolved without reprisal or
> threat of reprisal.

(Pls.' Ex. 2 [Dkt. 65-2].)  In addition to the USDOJ Equal

Employment Opportunity Policy, the USMS also issues its own policy

memoranda articulating its commitment to equal employment

opportunities.  The current USMS Director, Stacia Hylton, who has

been Director of the USMS since December 31, 2010, has issued an EEO

policy memorandum reaffirming the USMS' commitment to equal

employment opportunity and that complaints of discrimination may be

2

made without fear of retaliation.  Before Director Hylton's tenure, USMS Director John F. Clark regularly issued equal employment policy memoranda to reaffirm the USMS's commitment to a discrimination-free workplace.  The policies explain that USMS is committed to promoting and maintaining an environment of equality of opportunity for all employees and applicants for employment.  (Def.'s Opp. Ex. [Dkt. 68-2] at Ex. C-F.)

USMS is also guided by its Professionalism Policy, which reiterates that employees have a duty to act in a non-discriminatory fashion.  The Professionalism Policy specifically prohibits discrimination against or sexual harassment of an employee or job applicant, and engaging in any prohibited personnel activities. (*Id.* at Ex. G.)

## ii.   Merit Promotion Process

The USMS utilizes a Merit Promotion Process for promoting employees to GS-13, GS-14, and GS-15 law enforcement positions. (*See generally* Pls.' Ex. 2.)

### a. Phase 1 – Merit Promotion Staff and the Best Qualified List

USMS employees must meet three prerequisites to qualify to apply for promotion to a GS-13, GS-14, and GS-15 law enforcement position: (1) that they served one year in an operational position, (2) have taken the most recent USMS merit promotion examination, and (3) have submitted required documents to the USMS Merit Promotion

Staff during an annual "Open Season." (*Id.*)  The documents include an "Application for Law Enforcement Positions" that lists the applicant's work history, licenses, certifications, special skills, major accomplishments with dates and collateral duties. (*Id.*)  Also included is a verified Supervisory Performance Appraisal, a verified fit test, verified copies of the applicant's annual appraisal, an examination test score on policy and writing, and a U.S. Marshals Service Resume form.  Applicants then apply for a promotion or selection once a vacancy is announced by completing a "Request of Consideration."

The Merit Promotion Staff then assess the applications. The applications are scored using the following criteria: experience, training, education, and awards. (Pls.' Mot. at 3-4; Pls.' Ex. 2.)  This score is combined with the results from the merit promotion exam to create an applicant's overall applicant score. (*Id.*)

The Merit Promotion Staff then determines the "cutoff score" dividing the best qualified from the other candidates by including the five highest scoring candidates for each available position.  The Merit Promotion Staff creates the final certificate, or "Best Qualified List," listing all the applicants who are at or above the cutoff score or one point below the score.  The number of applicants listed on the Best Qualified List varies depending on the number of vacancies.

4

Candidates on the Best Qualified List for GS-14 and GS-15 positions are required to complete a structured interview.  The interviews are conducted by three-person panels consisting of GS-14 or GS-15 employees who have been trained or briefed in the structured interview process.  Unlike the merit promotion application and examination, candidates are not ranked numerically in the structured interview.  Instead, candidates receive evaluations in each of the eight categories ranging from very strong to very weak in each of the designated categories.  (*Id.*)

The final certificate, or Best Qualified List, contains only the following information about each candidate: current GS level, job title, duty location, entry on duty date with the USMS, date of last promotion, and (for GS-14 and GS-15 positions) the structured interview assessment.  The candidates are listed alphabetically, and the final certificate contains no information about the candidates' merit promotion scores.  (*Id.*)

b. Phase 2 – Marshal and USMS Assistant

Director Recommendations

The final certificate is sent to the appropriate United States Marshal for District positions, or to a USMS Assistant Director for Headquarters positions (Assistant Director), along with each candidate's Merit Promotion Resume.  The USMS headquarters is located in Arlington, Virginia.  U.S. Marshals direct the activities of the 94 federal judicial district offices (the Districts of the

Northern Mariana Islands and Guam share one Marshal) and the
Superior Court of the District of Columbia.

There are no formal procedures or criteria for the Marshal
or USMS Assistant Director to use in evaluating the candidates.  The
Marshal or Assistant Director has discretion to determine what, if
any, additional information he or she would like to consider in
evaluating the applicants and may request interviews with some or
all of the applicants.  The Marshal or Assistant Director may also
rely on his or her experience working directly with a candidate, or,
for candidates employed in another judicial district, may obtain
additional relevant information concerning the candidate.  This
includes communication with other Marshals or supervisory USMS
employees who may have worked directly with the candidate.  The
Marshal or Assistant Director creates his or her own "Recommendation
Worksheet," which is a list ranking the candidates for each vacant
position.  (*Id.*)

c. Phase 3 – Career Board Recommendations

Following the ranking recommendation by a Marshal or
Assistant Director, the Merit Promotion Staff provides a binder of
documents on all pending positions to the USMS Career Board.  The
binder (or electronic folder) contains the final certificates for
all positions under consideration, the Merit Promotion Resumes for
all candidates included on the final certificates, and the
Recommendation Worksheets submitted by the Marshal or Assistant

Director.  The binder does not contain any information about an applicant's EEO activity.

This binder is submitted to the Career Board.  The Career Board consists of GS-14 and higher career USMS law enforcement employees who typically serve a two-year term.  The Career Board meets a few times a year to select candidates to recommend for promotion.

When the Career Board members arrive at USMS Headquarters before the Career Board convenes, the individual vacancy announcements are assigned to individual Career Board members.  Each member spends one to two days reviewing the applications for the announcements that have been assigned to him or her.  After this individual review, the Career Board meets for deliberations.  During the deliberations, each member presents the facts concerning the announcements he or she has been assigned.  The Career Board members review the Marshal or Assistant Director's recommendations as part of its deliberations, and ultimately the members make a collective recommendation for all positions under consideration.  The Career Board typically adopts the recommendation of the Marshal or Assistant Director for the candidate to be selected, but has absolute discretion to recommend a different candidate than the Marshal or Assistant Director to the USMS Director.  The Career Board's recommendation is memorialized in the Career Board Notes. (Def.'s Opp. at Ex. E.)

The Equal Employment Opportunity Officer (EEO Officer) attends the deliberation segment of the meetings of the USMS Career Board. The EEO Officer has knowledge of any EEO complaints filed by candidates and attends in order to monitor the deliberations to ensure that the USMS' EEO policies are followed and that no discriminatory or retaliatory considerations are taken into account during the process. (Am. Compl. [Dkt. 46-2] ¶ 151; Def.'s Opp. at Ex. E.) It is the EEO Office's policy not to discuss applicants' EEO activity with the Career Board members.

### d. Phase 4 – Director's Decision

After reaching its recommendation, the Career Board members meet with the Director to discuss the Career Board's recommendation. The EEO Officer attends the Career Board meetings with the Director. It is the EEO Office's policy not to discuss applicants' EEO activity during this meeting. In addition to the Career Board's recommendation, the Director also receives the same materials made available to the Career Board, and may also request additional information concerning the candidates.

The USMS Director is the final selecting official and has complete discretion. He or she typically adopts the recommendation of the Career Board. (Pls.' Ex. 2.) The USMS Director may elect to cancel a position in lieu of filling it. (*Id.*)

### iii.  Plaintiff Linda I. Valerino

Plaintiff Valerino is a female, United States citizen and resident of the U.S. Virgin Islands. (Am. Compl. ¶ 11.) Ms. Valerino has worked for the USMS for 24 years. (Pls.' Ex. 3 [Dkt. 65-3].) She is currently assigned to the District of the Virgin Islands. (Am. Compl. ¶ 11.) Ms. Valerino brought her first EEO complaint in January of 2003. (Am. Compl. ¶ 21.) On December 19, 2008, the USMS declined to select Ms. Valerino for any of the eight Merit Promotion positions to which she applied. (Am. Compl. ¶ 22; Pls.' Ex. 3.) The Office of Inspection in Arlington, Virginia announced two vacancies to which three applicants, including Ms. Valerino, applied. (Am. Compl. ¶ 23; Pls.' Ex. 3.) The other two applicants were male. (*Id.*) All three applicants were on the Best Qualified List, but Ms. Valerino was ranked last. (Am. Compl. ¶¶ 24-25; Pls.' Ex. 3.)

The Career Board recommended the two male applicants, referencing the numbers of years on the job, different district assignments, and number of collateral duties. (Am. Compl. ¶¶ 26-27; Pls.' Ex. 3.) Ms. Valerino had 21 years of experience while the two male applicants had ten and seven years of experience, respectively. (Am. Compl. ¶ 27; Pls.' Ex. 3.) Ms. Valerino had more collateral duty experience, thirteen duties compared to each of the male applicants four duties. (Pls.' Ex. 3.) When one of the males was found to be ineligible shortly after selection, the second vacancy was cancelled, allegedly, only to be filled later by another

male.  (Am. Compl. ¶¶ 29-30.)  Neither of the selected males had
prior EEO activity.  (Am. Compl. ¶ 32.)  Valerino filed her second
EEO complaint based on these non-selections.  (Pls.' Ex. 3.)
Valerino's non-selection for positions to which she subsequently
applied present similar facts.  (*See* Am. Compl. ¶¶ 34-110; Pls.' Ex.
3.)  The non-selections are allegedly based on gender discrimination
and retaliation for filing previous EEO related complaints.  (Am.
Compl. ¶¶ 106-07; Pls.' Ex. 3.)

In April 2009, Plaintiff Valerino filed a formal U.S.
Department of Justice Complaint of Discrimination.  She alleges she
has suffered loss of income, loss of capacity to earn income, mental
anguish, loss of reputation, pain and suffering, and loss of
enjoyment of life as a result of alleged discrimination and
retaliation.

### iv.   Plaintiff Dora M. Alvarado

Plaintiff Alvarado is a female resident of Mexico City,
Mexico.  (Pls.' Ex. 8 [Dkt. 65-8].)  Alvarado has worked for the
USMS for 27 years.  (*Id.*)  She is currently assigned to the District
of Oregon.  (Am. Compl. ¶ 12.)  Ms. Alvarado brought her first EEO
complaint in 1997.  (Pls.' Ex. 8.)  Since 2007, the USMS has
declined to select Ms. Alvarado for any of the 29 Merit Promotion
positions to which she applied.  (Am. Compl. ¶ 112; *see also* Pls.'
Ex. 8.)  On some of the applications, Ms. Alvarado made the Best
Qualified List but was not selected.  (Am. Compl. ¶ 113.)  Ms.

Alvarado was allegedly consistently denied promotion or selection in favor of less qualified male applicants.  (Am. Compl. ¶ 114.)  The denials are allegedly based on gender discrimination and retaliation in the Merit Promotion Process, which has, allegedly, resulted in substantial injury.  (Am. Compl. ¶¶ 115-16; Pls.' Ex. 8.)

### v.   Plaintiff Jeffrey L. Bohn

Plaintiff Bohn is a male, United States citizen and resident of Massachusetts.  (Am. Compl. ¶ 13; Pls.' Ex. 5.)  Plaintiff Bohn has worked for the USMS for 20 years.  (*Id.*)  He is currently assigned to the District of Massachusetts.  (Am. Compl. ¶ 13.)  Mr. Bohn brought his first EEO complaint in 2004.  (Am. Compl. ¶ 117; Pls.' Ex. 5 [Dkt. 65-5].)  Since 2006, the USMS has declined to select Mr. Bohn for any of the nine Merit Promotion positions to which he applied, though he has, at times, been on the Best Qualified List.  (Am. Compl. ¶ 119; *see also* Pls.' Ex. 5.)  Mr. Bohn was allegedly consistently denied promotion or selection in favor of less qualified candidates.  (Am. Compl. ¶ 120; *see also* Pls.' Ex. 5.)  The non-selections and failures to promote are allegedly based on retaliation in the Merit Promotion Process, which has allegedly resulted in substantial injury to Plaintiff Bohn.  (Am. Compl. ¶¶ 121-22; Pls.' Ex. 5.)

### vi.   Plaintiff Margarita V. Serna

Plaintiff Serna is a female, United States citizen and resident of Texas.  (Am. Compl. ¶ 14; Pls.' Ex. 6.)  Ms. Serna has

worked for the USMS for 17 years.  (Pls.' Ex. 6 [Dkt. 65-6].)  She
is currently assigned to the District of Texas.  (Am. Compl. ¶ 14.)
Ms. Serna brought her first EEO complaint in 2005.  (Am. Compl. ¶
123; Pls.' Ex. 6.)  Since 2008, the USMS has declined to select Ms.
Serna for any of the eleven Merit Promotion positions to which she
applied.  (Am. Compl. ¶ 124; Pls.' Ex. 6.)  On some of the
applications, Serna made the Best Qualified List but was not
selected.  (Am. Compl. ¶ 125; Pls.' Ex. 6.)  Ms. Serna was allegedly
consistently denied promotion or selection in favor of less
qualified applicants.  (Am. Compl. ¶ 130; Pls.' Ex. 6.)  The denials
are allegedly based on gender discrimination and retaliation in the
Merit Promotion Process, which allegedly resulted in substantial
injury.  (Am. Compl. ¶¶ 131-32.)

vii.   Plaintiff Tam M. Wyatt

Plaintiff Wyatt is a female United States citizen and
resident of Virginia.  (Am. Compl. ¶ 12; Pls.' Ex. 7 [Dkt. 65-7].)
Ms. Wyatt has worked for the USMS for 24 years.  (*Id.*)  She is
currently assigned to the District of Columbia Superior Court.  (Am.
Compl. ¶ 12.)  Ms. Wyatt brought her first EEO complaint in 2008.
(Am. Compl. ¶ 133; Pls.' Ex. 7.)  Since 2008, the USMS declined to
select Ms. Wyatt for any of the nine Merit Promotion positions to
which she applied.  (Am. Compl. ¶ 134.)  Ms. Wyatt was allegedly
consistently denied promotion or selection in favor of less
qualified applicants. (Am. Compl. ¶ 139; Pls.' Ex. 7.)  The denials

are allegedly based on gender discrimination and retaliation in the Merit Promotion Process, which has allegedly resulted in substantial injury.  (Am. Compl. ¶¶ 140-41; Pls.' Ex. 7.)

Plaintiffs bring multiple claims alleging failure to promote because of gender discrimination and retaliation. Plaintiffs ask this Court to certify them as a class, award compensatory damages to the class, issue a declaratory judgment that Defendant has violated federal law with regard to the improper consideration of gender and EEO related complaints, award attorneys' fees, costs, and expense, and any further relief that the Court deems just and proper.

### B. Procedural Background

The case was transferred to this Court on October 18, 2011.  [Dkt. 26.]  The initial complaint generally alleged four class claims: (1) Title VII disparate treatment in promotion decisions based on gender; (2) Title VII retaliation in promotion decisions against EEO Complainants; (3) Title VII hostile work environment; and (4) conspiracy to deny Plaintiffs equal protection under the law pursuant to 42 U.S.C. § 1985.  [*See* Dkt. 1.]

On December 7, 2011, Defendant moved to dismiss the hostile work environment and conspiracy claims and for summary judgment with respect to the class disparate treatment and retaliation claims.  [Dkts. 29-31.]  Plaintiffs withdrew the

13

conspiracy count, and this Court granted Defendant's motion to dismiss the hostile work environment claim. [Dkt. 44.] The Court, however, denied summary judgment without prejudice on the class gender discrimination and retaliation claims. (*Id.*) It found that Plaintiffs were entitled to discovery and that "[t]he issue of class action certification and summary judgment can . . . be revisited." (Def.'s Opp. Ex. A.) On February 19, 2012, Plaintiffs filed Motion to Amend Complaint limiting their claims to disparate treatment and retaliation. [Dkt. 46.]

On February 22, 2012, the Court entered a Rule 16(b) Scheduling Order adopting the parties' proposed discovery plan. [Dkt. 49.] The plan provided for bifurcated discovery and established that class discovery closed on March 30, 2012. During the course of the class discovery, Defendant produced documents evaluated by and/or generated as part of the formal Career Board process between 2007 and 2011, as well as spreadsheets listing all eligible Merit Promotion applicants and EEO complainants in that time period. In addition, Plaintiffs conducted a Federal Rule of Civil Procedure 30(b)(6) deposition of Molly Lowry, the Chief of Operational Staffing and Merit Promotion in the USMS Human Resources Division, and Tanya Wright, the Chief of Complaints Processing for the USMS EEO. Plaintiffs also deposed former USMS Director John Clark, former Career Board Chairman Robert Fagan, former Career

Board member Chief Deputy John Clark, and Office of Internal Investigation Chief Stanley Griscavage.

Plaintiffs filed their Motion for Class Certification on April 25, 2012.  [Dkt. 65.]  On May 8, 2012, Defendant filed its Opposition to the Motion for Class Certification.  [Dkt. 68.]  Along with it, it filed a Motion for Judgment on the Pleadings.  [Dkt. 69.]  On May 14, 2012, Plaintiffs filed a Reply in Support of Class Certification.  [Dkt. 72.]  And, on May 16, 2012, Plaintiffs filed their Opposition to the Motion for Judgment on the Pleadings.  [Dkt. 74.]  On May 17, 2012, Defendant filed a Reply in Support of the Motion for Judgment on the Pleadings.  [Dkt. 76.]

Also, on May 16, 2012, Defendant filed a Motion to Strike in part certain declarations filed as part of Plaintiffs' Motion for Class Certification.  [Dkt. 73.]  On May 17, 2012, Plaintiffs filed an Opposition to the Motion to Strike.  [Dkt. 75.]

This case is now before the Court on Plaintiffs' Motion to Motion to Amend Complaint and Motion to Certify Class Action, and Defendant's Motion to Strike.

## II.  Standard of Review

A. <u>Motion to Amend</u>

A party may amend its complaint after a responsive pleading has been served "only by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a).  Rule 15 of the Federal Rules of Civil Procedure directs that "leave shall be

freely given when justice so requires." *Id.*  The liberality of the
rule "gives effect to the federal policy in favor of resolving cases
on their merits instead of disposing of them on technicalities."
*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*citing Conley v.
Gibson*, 355 U.S. 41, 48 (1957)).  Therefore, "leave to amend a
pleading should be denied 'only when the amendment would be
prejudicial to the opposing party, there has been bad faith on the
part of the moving party, or the amendment would be futile.'"
*Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)
(*quoting Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.
1986)).  A post-judgment motion to amend is evaluated under the same
standard as if it were filed before judgment; however, a grant of a
post-judgment Rule 15(a) motion can only be granted in concurrence
with a Rule 59(e) or 60(b) motion.  *Laber*, 438 F.3d at 427.

      B. <u>Rule 23</u>

      "Class certification is governed by Federal Rule of Civil
Procedure 23."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,
2548 (2011).  In order to certify a class, a plaintiff must satisfy
all four requirements listed in Rule 23(a) and at least one of the
three requirements listed in Rule 23(b).

      To satisfy the requirements of Rule 23(a), Plaintiffs must
demonstrate that: "(1) the class is so numerous that joinder of all
members is impracticable, (2) there are questions of law or fact
common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Turning to the Rule 23(b) requirements, subsection 23(b)(1) allows a class to be maintained where "prosecuting separate actions by or against individual class members would create a risk of " either "(A) inconsistent or varying adjudications," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impeded their ability to protect their interests." Subsection (b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b).

Finally, subsection (b)(3) requires proof that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). The matters pertinent to these findings include: (A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against

class members; (C) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum;

and (D) the likely difficulties in managing a class action.  *Id.*

A plaintiff seeking class certification bears the burden

of proving the proposed class complies with the requirements of Rule

23.  *Windham v. Am. Brands*, Inc., 565 F.2d 59, 65 n.6 (4th Cir.

1977) (en banc).  And, as the Supreme Court recently explained,

> Rule 23 does not set forth a mere pleading
> standard.  A party seeking class certification
> must affirmatively demonstrate his compliance
> with the Rule--that is, he must be prepared to
> prove that there are *in fact* sufficiently
> numerous parties, common questions of law or
> fact, etc.  We recognized in *Falcon* that
> 'sometimes it may be necessary for the court to
> probe behind the pleadings before coming to rest
> on the certification question,' and that
> certification is proper only if 'the trial court
> is satisfied, after a rigorous analysis, that
> the prerequisites of Rule 23(a) have been
> satisfied.'

*Wal-Mart Stores,* 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 160-61 (1982)) (emphasis in original)

(internal citations omitted).

### III.  Analysis

A. Motion to Amend

As a preliminary matter, the Court grants Plaintiffs'

Motion to Amend Complaint.  [Dkt. 46.]  Here the Amended Complaint

limits Plaintiffs' claims to disparate treatment and retaliation.

The Court finds that the amendment is not prejudicial to Defendant,

there has been no bad faith on the part of Plaintiffs, and there is not claim that the amendment would be futile.

### B. Motion for Class Certification

Turning to Plaintiffs' Motion for Certification, Plaintiffs seeks certification of a class consisting of: all current and former U.S. Marshals Service (USMS) employees who have applied for promotion under the USMS Merit Promotion process from March 2006 to December 2010 and are either (a) female, or (b) prior EEO participants.

### i.   Rule 23(a) Requirements

The Court will first undertake the requisite rigorous analysis to determine if the Federal Rule of Civil Procedure 23(a) requirements for certification are satisfied in this case. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores,* 131 S. Ct. at 2550 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (citing *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotation omitted). The Supreme Court has explained that Rule 23(a)'s "requirements -- numerosity, commonality, typicality, and adequate representation -- 'effectively limit the class claims to those fairly encompassed by

19

the named plaintiff's claims.'" *Wal-Mart Stores*, 131 S. Ct. at 2550

(quoting *Falcon*, 457 U.S. at 156).

### a. Commonality

#### i. Requirements

Class certification under Rule 23 requires Plaintiffs to

show that "there are questions of law or fact common to the class."

Fed. R. Civ. P. 23(a).  Before turning to this requirement, the

Court notes that "[i]n a class action brought under Rule 23(b)(3),

the 'commonality' requirement of Rule 23(a)(2) is subsumed under, or

superseded by, the more stringent Rule 23(b)(3) requirement that

questions common to the class 'predominate over' other questions."

*Lienhart v. Dryvit Sys.*, 255 F.3d 138, 147 (4th Cir. 2001) (quoting

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)).  This

Court, however, will first address whether commonality exists under

Rule 23(a) in light of the recent precedent from the Supreme Court

in *Wal-Mart Stores*, recognizing that if Plaintiffs cannot establish

commonality under Rule 23(a), then, *a fortiori*, they cannot satisfy

the more stringent requirements of Rule 23(b).

The questions of law raised in this case are brought under

Title VII of the Civil Rights Act of 1964.  Title VII broadly

forbids employers from discriminating against employees on the basis

of employees' sex or gender.  42 U.S.C. § 2000e-2(a) (2010); *see

also Hux v. City of Newport News, Va.*, 451 F.3d 311, 314 (4th Cir.

2006).  Title VII also prohibits employers from retaliating against

employees for filing charges of discrimination against the employer or participating in discrimination proceedings. 42 U.S.C. § 2000e-3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006).  Section 707 of Title VII allows the federal government, though the Attorney General or the Equal Employment Opportunity Commission, to bring a civil action against an employer for a "pattern or practice" of discrimination or retaliation against a group protected by the statute.  42 U.S.C. § 2000e-6(a); *see also Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999).  In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 357-60 (1977), the Supreme Court "endorsed the application of pattern or practice principles and rules of proof to class action lawsuits brought by private parties."  *Lowery*, 158 F.3d at 760.

To make out a prima facie case of unlawful pattern or practice of discrimination, the plaintiff class must "establish by a preponderance of the evidence that . . . discrimination was the [employer's] standard operating procedure[,] the regular rather than the unusual practice."  *Teamsters*, 431 U.S. at 336.  This standard requires proof of "more than the mere occurrence of isolated[,] 'accidental' or sporadic discriminatory acts."  *Id*.  The requisite "prima facie showing may in a proper case be made out . . . by a culmination of evidence, including statistics, patterns, practices,

general policies, or specific instances of discrimination."

*E.E.O.C. v. Am. Nat'l Bank*, 652 F.2d 1176, 1188 (4th Cir. 1981).

In *Wal-Mart Stores,* the Supreme Court reviewed a Ninth

Circuit Court of Appeals decision to affirm class certification in a

"pattern-or-practice" action against Wal-Mart Stores.   The certified

class consisted of "all women employed at any Wal-Mart domestic

retail store at any time December 26, 1998, who have been or may be

subjected to Wal-Mart's challenged pay and management track

promotions policies and practices."   *Wal-Mart Stores*, 131 S.Ct. at

2549 (internal quotations omitted).

The Court recognized that, in order to establish

commonality, plaintiffs seeking class certification are required "to

demonstrate that the class members 'have suffered the same

injury[]'" and that "[t]heir claims depend upon a common contention

. . . of such a nature that it is capable of classwide

resolution[.]"   *Id.* at 2551.   In "pattern-or-practice" cases, such

"proof of commonality necessarily overlaps with [plaintiffs'] merits

contention that [the defendant employer] engages in a *pattern or*

*practice* of discrimination."   *Id.* at 2552 (emphasis in original).

Proof of the alleged pattern or practice of discrimination provides

the requisite common answer to the question of why the challenged

body of numerous individual employment decisions disfavored the

individuals comprising the class.   *Id.*

Plaintiffs argue that the "standard for commonality is low" and point to the Court's notation in *Wal-Mart* that "a single common question will do." (Pls.' Reply [Dkt. 72] at 3.) Yet, the Court in *Wal-Mart Stores* undertook what this Court submits was a fairly rigorous analysis of the dissimilarities between putative class members "in order to determine (as Rule 23(b)(2) requires) whether there *is* '[e]ven a single [common] question.'" *Wal-Mart Stores*, 131 S.Ct. at 2556 (emphasis in original). Little in *Wal-Mart Stores* can be said to suggest that the standard for commonality is one that is easily met, particularly in light of the Court's explanation that,

> [c]onceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.* at 2553 (quoting *Falcon*, 457 U.S. at 157-58).

The Supreme Court in *Wal-Mart Stores*, quoting *Falcon,* described two ways in which plaintiffs asserting class claims for discriminatory pattern or practice may meet their burden of bridging the conceptual gap:

> First, if the employer 'used a biased testing procedure to evaluate [applicants and/or employees,] a class action on behalf of every

> applicant or employee who might have been
> prejudiced by the test clearly would satisfy the
> commonality and typicality requirements of Rule
> 23(a).' Second, '[s]ignificant proof that an
> employer operated under a general policy of
> discrimination conceivably could justify a class
> of both applicants and employees if the
> discrimination manifested itself in hiring and
> promotion practices in the same general fashion,
> such as through entirely subjective
> decisionmaking processes.'

*Id.* (quoting *Falcon*, 457 U.S. at 159 n.15). The Court affirmed

this statement from *Falcon* "precisely describes respondents' burden

in this case." *Id.* And in applying those tests, the Court found

that respondents "provide[d] no convincing proof of a company-wide

discriminatory pay and promotion policy" and concluded that they

failed to establish the existence of a question of law or fact

common to their proposed class. *Id.* at 2556-57.

ii. <u>Commonality as to the Subclasses</u>

Plaintiffs argue that the Merit Promotion Process creates

an unlawful disparate impact on the subclasses of female employees

and EEO complainants.[1] To review, the Merit Promotion Process

contains both subjective and objective evaluation. Initially, all

applicants are rated and ranked against the same objective criteria.

A portion of those applicants then continue through three levels of

subjective, discretionary decision making. First, they are sent to

---

[1] Assuming women and EEO complainants did constitute subclasses, Plaintiffs would
still be required to satisfy independently Rule 23's requirements for each group.
*See, e.g., Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 189 (4th Cir.
1993) (finding that while "district courts may separate and certify certain issues
for class treatment, the 'subclass' on each issue still must independently meet
all the requirements of [Rule 23]").

the Marshal in one of the 94 district offices or in the District of
Columbia, or to a USMS Assistant Director for headquarter positions.
The individual Marshal or Assistant Director follows no formal
procedures or criteria and can obtain any relevant information.  He
or she exercises complete discretion and ranks the candidates.
Next, the Career Board (whose members rotate every two years),
review a more limited set of information, and exercises its own
discretion to make a recommendation to the Director.  Finally, the
Director exercising his or her own complete discretion makes the
final decision.

        Plaintiffs' theory of this case, i.e., explanation as to
why the Merit Promotion Process is discriminatory, is everything but
explicit.  In its Motion for Class Certification, Plaintiffs do not
submit that there is an express corporate policy against the
advancement of women or EEO complainants, nor do they explicitly
argue any of the following: (1) that the Phase 1 objective ranking
uses criteria or operates in a way that is biased, (2) that there is
a strong culture in the USMS throughout the country that permits
bias against women and EEO complainants and infects the
discretionary decision making at the Phase 2 level for the Marshals
and Assistant Directors and/or the Phase 3 Career Board level (as in
*Wal-Mart*), or (3) that Director John Clark is biased against women
and EEO complainants and/or was aware of a disparate impact on
female and EEO employees in the Career Board recommendations.

Instead they simply submit that "it appears that discrimination may taint the process at [Phase 2, 3 and 4], including the place where it ultimately manifests in the Director's final promotion selections." (Pls.' Reply at 7.)

The fact that Plaintiffs never explicitly articulated a theory of the case becomes particularly problematic when the Court turns to the first issue of whether Plaintiffs' arguments about commonality should be assessed under the first or second prong of the *Falcon* test. Plaintiffs originally only argued that the Merit Promotion Process met the first "biased testing procedure" prong of *Falcon.* (Pls.' Mot. at 16.) Defendant, however, argues that there is no biased testing procedure, and that Plaintiffs are really alleging operation under a general policy of discrimination (which requires significant proof). Thus, in their Reply briefing, Plaintiffs also argue that there is substantial proof of a general policy of discrimination. (Pls.' Reply at 4.)

In evaluating the first prong of the *Falcon* test -- whether there was a biased testing procedure -- the Supreme Court in *Wal-Mart Stores* stated that, "Wal-Mart has no testing procedure or other companywide evaluation method that can be charged with bias." *Wal-Mart Stores,* 131 S. Ct. at 2553. The Court explained that that "[t]he whole point of permitting discretionary decision making is to avoid evaluating employees under a common standard." *Id.*

Plaintiffs note that *Wal-Mart Stores* expanded on *Falcon's* description of the first prong -- the "biased testing procedure" -- when it used the phrase "company evaluation method." (Pls.' Mot. at 16.) And Plaintiffs assert that the Merit Promotion Process is such a method. Defendant argues that the Court in *Wal-Mart* contemplated objective evaluation methods that are biased, and that in order to satisfy commonality based on an entirely subjective decision making process, a plaintiff must demonstrate the second prong of *Falcon* -- that an employer operated under "general policy of discrimination." (Def.'s Opp. [Dkt. 68] at 16.) Plaintiffs disagree,[2] and argue that the first prong applies "to subjective decision making where there is a 'common mode of exercising discretion that pervades the entire company.'" (Pls.' Reply at 6 (quoting *Wal-Mart Stores*, 131 S. Ct. at 2555-56).) The Court will address the applicability of *Falcon* to Plaintiffs allegations in reviewing the various theories of the case.

1. Phase 1 Objective Criteria

First, Plaintiffs do not submit that the Phase 1 objective portion of the Merit Promotion Process results in gender discrimination or retaliation against EEO complainants. It, however, was clearly what the Supreme Court had in mind for the first prong of the *Falcon* test when it described a biased testing

---

[2] Plaintiffs' argument is somewhat unclear. Plaintiffs state that "[i]t does not appear from the *Wal-Mart* decision that the Supreme Court intended to limit company-wide policies to those that are entirely objective." (Pls.' Reply at 6.) This Court assumes that Plaintiffs refer to the "testing procedure" or" company evaluation method" prong, as opposed to "general policy of discrimination" prong when it says "company-wide policies."

procedure.   In Phase 1 there was an objective procedure, or method, for scoring applicants and then creating a cut-off point.   Under such a procedure it is patent that everyone was subjected to a common standard and thus share the same claim to prejudice under that standard.   *See Falcon*, 457 U.S. at 159 (noting that the use of a testing procedure would lead to clear satisfaction of the commonality and typicality requirements); *Wal-Mart Stores*, 131 S. Ct. at 2553 (noting the effect of a common standard).   That portion of the process, like Wal-Mart's requirement that all candidates meet certain objective criteria, is not an issue in this case.

## 2. Phase 2 & 3 Discretion

Second, to the extent that Plaintiffs assert that there is a strong culture throughout the country that permits bias against women and EEO complainants and infects the discretionary decision making at both the Phase 2 level for the Marshals and Assistant Directors and the Phase 3 Career Board level, their assertion should be assessed under the general policy of discrimination of *Falcon*. This the very claim the Supreme Court assessed in *Wal-Mart Stores* and there the Court applied the general policy of discrimination analysis.   Both Phase 2 and Phase 3 involve complete discretion by the Marshal or Assistant Director and the Career Board.   And, as the Supreme Court explained in *Wal-Mart Stores*, "[t]he whole point of permitting discretionary decision making is to avoid evaluating employees under a common standard."   131 S. Ct. at 2553.

Plaintiffs argue that "the USMS Merit Promotion Process is a company-wide employment policy that creates a common mode of exercising discretion that pervades the entire employer." (Pls.' Reply at 4.)  And they assert that the "testing procedure" prong of *Falcon* applies because there is a "common mode of exercising discretion."  Plaintiffs attempt, however, to convert completely discretionary review into a biased procedure falls well short. Phase 2 and Phase 3 are simply points at which particular people exercise discretion.  That discretion itself cannot be said to be the same or "common."  The only common mode is the fact that USMS sets up a structure where applicants have to meet objective criteria and then are subject to discretionary review in phases.  Certainly every applicant is subject to that structure, but so was every applicant in Wal-Mart subject to a structure where they had to meet certain objective criteria and then were subject to diffuse review by regional and district managers.  That there is *some* common structure governing promotion does not mean it amounts to a biased testing procedure as described by the Supreme Court in *Falcon* and *Wal-Mart Stores*.  Rather the Court must assess the specific thing that a plaintiff claims creates bias and understand the way in which it is common to the class.  For this reason, Plaintiffs emphasis on a lengthy manual governing promotions rings entirely hollow.

i.   <u>Phase 2</u>

29

In Phase 2, Marshals around the country, along with
Assistant Directors at headquarters, use their own judgment in
evaluating and ranking applicants.  This is precisely the case in
*Wal-Mart Stores*, and Plaintiffs have to demonstrate that the policy
of permitting discretion amounts to a general policy of
discrimination.  And, with this Plaintiffs need significant proof
that the USMS Marshals and Assistant Directors operated under the
general policy of discrimination.  That is entirely absent here.

In *Wal-Mart Stores*, the Supreme Court observed that "[p]ay
and promotion decisions at Wal-Mart [were] generally committed to
local managers' broad discretion, which [was] exercised in a largely
subjective manner."  131 S. Ct. at 2547.  The Court found that the
respondents failed to identify "a common mode of exercising
discretion that pervade[d] the entire company," *id.* at 2554-55, or
any "specific employment practice . . . that tie[d] all their 1.5
million claims together[,]" *id.* at 2555-56.  "Wal-Mart's 'policy' of
allowing discretion by local supervisors over employment matters"
was, "[o]n its face, . . . just the opposite of a uniform employment
practice that would provide the commonality needed for a class
action[.]"  *Id.* at 2554 (emphasis in original).

> In such a company, demonstrating the invalidity
> of one manager's use of discretion will do
> nothing to demonstrate the invalidity of
> another's.  A party seeking to certify a
> nationwide class will be unable to show that all
> the employees' Title VII claims will in fact
> depend on the answers to common questions.

*Id.*

Plaintiffs offer nothing that distinguishes Phase 2 from the facts in *Wal-Mart Stores* in their favor.  First, USMS' express policy forbids sex discrimination and retaliation against EEO complainants.  Second, Plaintiffs do not offer expert testimony about how regular stereotypes of women or dislike for EEO complainants play a meaningful role in employment decisions at the Marshal and Assistant Director level.  *See Wal-Mart Stores*, 131 S. Ct. at 2554 (noting that a social framework expert could not "determine with any specificity how regularly stereotypes play a meaningful role in employment decisions at Wal-Mart.)  And, although USMS is smaller that Wal-Mart in size, there are a substantial number of Marshals and Assistant Directors located throughout the United States.  It remains "quite unbelievable" that all Marshal and Assistant Directors would exercise their discretion in a common way without some common direction.  *Id.* at 2555.

Specifically as to gender, Plaintiffs only offer anecdotal evidence that is far too weak to raise any inference that all the individual, discretionary decisions made by Marshals and Assistant Directors are discriminatory.  It cannot establish commonality on its own.  Plaintiffs argue that "four female plaintiffs offer anecdotal evidence of over fifty instances in which they applied for Merit Promotion and were denied promotion in favor males that were less qualified."  (Pls.' Reply at 4.)   Whatever the merits of Plaintiffs' individual claims of discrimination, Plaintiffs cannot

simply aggregate their individual allegations to demonstrate
commonality.  Simply, four females cannot on their own represent
over 90 different districts located throughout the country, plus
headquarters.  *See Wal-Mart Stores*, 131 S. Ct. at 2556 & n.9 ("when
the claim is that a company operates under a general policy of
discrimination, a few anecdotes selected from literally millions of
employment decisions prove nothing at all").  And, Plaintiffs offer
no evidence that there exists a statistically significant bias
against women.[3]

As to EEO complainants, in addition to the same type of
anecdotal evidence (from five Plaintiffs), Plaintiffs offer
statistical evidence.  Plaintiffs' expert Dr. Charles Mann reviewed
87 EEO complainants from 2008-2011 and found that non-EEO
complainants were 3.5 times more likely to be promoted over
complainants.  (Pls.' Reply at 5.)[4]  That conclusion however merits
almost no weight.  First, the time period is inaccurate, as the
proposed class is from 2006 to 2010.  Second, the substantive
analysis in flawed, as EEO complainants who applied for Merit
Promotion are the relevant set of individuals, not simply all EEO
complainants.  Third, the evidence is not specific to Phase 2 of the
process.  And, like in *Wal-Mart*, they fail to support an inference

---

[3] Plaintiffs seek more discovery time, but it is clear that they had adequate time
to conduct the appropriate analysis, particularly as they were able to conduct the
analysis with respect to EEO complainants.  The Court finds the request completely
unfounded.

[4] The Court notes that Plaintiffs produced the expert report after filing its
Motion for Class Certification and, thus, they inappropriately address the report
only in their Reply.

that "discriminatory treatment is typical of [the employer's employment] practices." *Wal-Mart Stores,* 131 S. Ct. at 2555 (quoting *Falcon,* 457 U.S. at 158.)   The data is not specific to the 94 offices or headquarters, nor can nationwide figures alone demonstrate commonality of issue. *See id*. Plaintiffs also submit evidence, which Defendants challenge, that the EEO office copies EEO complainant's supervising Marshal on complaints, thus providing direct knowledge of EEO activity to the recommending officials. Assuming *arguendo* that the Marshals were copied, evidence of their potential knowledge does not equate to evidence of bias. Plaintiffs' argument that co-workers may become aware of EEO complaints and those individuals may be interviewed in the evaluation process falls flat for the same reason.  Evidence that Marshal could obtain knowledge does not equate to bias.  Plaintiffs must demonstrate much more than an evaluator's awareness that an individual was a member of protected group in order to establish commonality as to all evaluators' bias.

ii.   Phase 3

Phase 3 is somewhat different than Phase 2 because there is a centralized group of individuals that makes a recommendation. The Career Board meets to jointly assess the candidates, and so all candidates for any particular meeting are at least subject to a common set of decision makers.  Nonetheless there is nothing inherently biased about having a board of people exercise complete

33

discretion in their review of applicants.  Rather Plaintiffs would need significant proof that there was a general policy of discrimination exercised by the Board members.

Plaintiffs argue that the Career Board discretion is "limited to the selection of USMS employees who qualified for the Merit Promotion Process and made the final certification list." (Pls.' Reply at 7.)  Yet, the discretion is not limited in any real way by this and it is no different than *Wal-Mart Stores* where managers were limited to candidates who met certain objective criteria.  Plaintiffs also argue that the "Career Board's discretion is further limited by a common mode of exercising it that restricts the official to following the recommendations of the Merit Promotion officials on the tier below them." (Pls.' Reply at 7.)  This, however, is simply not true.  That the Career Board may often agree with the recommendation of the Marshal or Assistant Directors located through the country, does not meant the Board's discretion is limited or restricted.  It is not.  The Court finds that the discretion exercised by the Board members undercuts any claim of a common procedure or method, and that Plaintiffs need significant proof that there was a general policy of discrimination exercised by the Board members.

Here there is proof of commonality, but only as to any particular set of individuals on the Career Board.  Particular applicants were subject to review by particular Boards.  The Board

34

members rotated every 2 years, and without evidence that the Board
members were the same for all Plaintiffs (which they could not be as
the proposed class spans more than 2 years), the claim of
commonality must fail.  Again, Plaintiffs do not offer anything
beside the anecdotes and statistical evidence already discussed to
establish a uniform company-wide policy of discrimination against
both women and EEO complainants.  As to EEO complainants, the only
additional argument Plaintiffs make is that many Marshals at Phase 2
become members of the Career Board, and since they may have
knowledge of EEO complaints, members of the Career Board may have
knowledge of EEO complaints.  Again, this evidence falls flat,
particularly in light of the fact that an EEO officer is present
during Career Board meetings presumptively to ensure EEO compliance.

### 3. Phase 4 Director Discretion

          Finally, to the extent that Plaintiffs assert that
Director John Clark is biased against women and EEO complainants,
their assertion should be assessed under the general policy of
discrimination prong from *Falcon*.  Like Phase 2 and Phase 3, the
Director exercises complete discretion and so there is no common
standard under which Phase 4 of the system evaluates candidates.
Plaintiffs cannot demonstrate that the procedure or method of having
the Director review all applicants is itself biased.  Rather they
could demonstrate that any particular Director was a biased

individual, and that his review of applicants amounted to a general policy of discrimination.

Here there is significant proof of commonality, as it is undisputed that John Clark was the Director during the proposed class period.  And, in fact, this type of commonality was suggested by the Supreme Court in *Wal-Mart Stores*, when it said, "claims must depend upon a common contention--for example, the assertion of discriminatory bias on the part of the same supervisor."  131 S. Ct. at 2251.  The Court went on to explain, "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id.* (internal quotations removed).

It is this latter requirement, however, that begins to touch on the issues that prevent class certification of this case. Although Plaintiffs may share a common Director, resolution of his bias will not necessarily resolve an issue that is central to the validity of each Plaintiffs' claim.  It is here where the

36

requirements of commonality and typicality overlap.  Courts have
recognized that "[t]he commonality and typicality requirements of
Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13.  "Both
serve as guideposts for determining whether under the particular
circumstances maintenance of a class action is economical and
whether the named plaintiff's claim and the class claims are so
interrelated that the interests of the class members will be fairly
and adequately protected in their absence." *Wal-Mart Stores*, 131 S.
Ct. at 2551 (quoting *Falcon*, 457 U.S. 157-58).  As this Court will
discuss below, Plaintiffs cannot demonstrate that they are
sufficiently typical or that absent class members would be
adequately protected.

                     iii.  <u>Commonality as to the Super-Class</u>

      Before turning to the issues with certifying the
subclasses on the basis of Director Clark's alleged bias, Plaintiffs
also seeks to represent a single class of all women and all EEO
complainants who were denied promotions to GS-13, GS-14, and GS-15
positions, with subclasses of women and EEO complainants.  (Pls.'
Mot. at 2-3, 18.]  Plaintiffs submit that "it is most appropriate to
set up the proposed class as one class of USMS employees who were
wrongly denied merit promotion with a subclass for each protected
class (gender and reprisal) as some class members may be in one
subclass, the other subclass or both."  (Pl.'s Reply at 2.)  They

argue that "the discriminatory behavior experienced by class merit applicants for merit promotion as the same . . . ." (*Id.*)

Yet, the women and EEO complainants, however, were allegedly mistreated for inherently different reasons.  The first group alleges gender discrimination and the second group alleges retaliation.  Discrimination against women is not intrinsically related to retaliation against EEO complainants.  The Supreme Court in *Wal-Mart Stores* was clear that plaintiffs must "demonstrate that the class members have suffered the same injury" and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  131 S. Ct. at 2251.

b. Phase 4 & Typicality

Turning to the issues with certifying a class on the basis of Director Clark's bias, the Court's analysis takes place in the area where the commonality and typicality requirements merge. Plaintiffs cannot demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a).  The Fourth Circuit has found that to demonstrate "typicality," the representative plaintiff's "claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim."  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67

(4th Cir. 2006).  "To conduct th[e typicality] analysis, we begin with a review of the elements of plaintiffs' *prima facie* case and *the facts on which the plaintiff would necessarily rely to prove it*. We then determine the extent to which those facts would also prove the claims of the absent class members."  *Id.* at 467 (emphasis added).

The parties dispute whether Plaintiff Valerino is the sole class representative.  This Court need not to reach this question, because the asserted class representatives themselves do not have claims that are sufficiently typical, nor can they be said to by typical of all absent class members.

Plaintiffs might all theoretically have a common claim to bias on the part of Director Clark.  But any individual class member may not rely on that claim in his or her case.  Some individuals may want to argue about the Phase 1 process and show that the process was flawed or was not followed correctly in his or her particular situation resulting in bias.  For example, Plaintiffs seek to challenge all GS-13, GS-14, and GS-15 promotion decisions.  But the application process for GS-13 positions differs from the process for GS-14 and GS-15 positions at Phase 1 because GS-13 applicants do not undergo an interview.  Some class members may want to challenge the role or substance of the interview.  Or they may want to challenge the fact that they failed to make the Best Qualified List and here

none of the named Plaintiffs have challenged a promotion denial where they failed to make the Best Qualified List.

Other individuals may want to argue their particular Phase 2 Marshal or Associate Director was the source of the bias that they individual experienced in the process.  They may have substantial evidence that the particular Marshal in their District was biased.  And still others may want to put aside Phase 1 and Phase 2 and argue that their particular Phase 3 Career Board was the source of prejudice.  In advancing these different claims, it is likely that any individual class member may choose not to rely on a claim that Director Clark was biased.  Thus, Mr. Clark's bias is not necessary and it cannot be said to be typical of the plaintiffs.

Aside from the structure of the system creating other opportunities for bias, the notion that various plaintiffs may not rely on Director Clark's decision is made evident by the fact that more than eighty percent of the time he affirmed the recommendation of the Career Board.  Thus, it is likely that class members will rely on the decisions of their particular Career Board.  And since the Board often relies on the list from the Marshals or Assistant Directors scattered throughout the county, it is likely plaintiffs will rely on the decisions of their district Marshal or Assistant Director.  Furthermore, the notion that various plaintiffs may not claim Director Clark was biased is strengthened by the fact that Plaintiffs offer no evidence of Director Clark's own personal bias.

40

They can point to no deposition testimony or statistics suggesting that he was biased against women *or* EEO complainants.  And, here they even fall short on anecdotes.   The only thing they point to is the fact the EEO Director reports to the Director in the organizational structure.  Yet, they offer no evidence of inappropriate knowledge of, much less use or reliance on, EEO complainant information.

This is all to say nothing of the different facts plaintiffs would rely on to prove their disparate claims -- different ranking lists, different Career Board notes, different characteristics of individuals like years on the job, district assignments, and collateral duties, different number of applicant applications, etc.  The named Plaintiffs do not even explicitly assert that their claims are all dependent on Director Clark's bias.  And it is clear that their claims at least involve different Marshals and Career Boards.  This alone is sufficient to demonstrate that their claims are not typical of other members of the class.

Furthermore, even if Plaintiffs did present a class of individuals who relied solely on Director Clark's bias, they would still fail to meet the typicality test.  Plaintiffs are seeking damages and should they prevail in showing discrimination, USMS is "entitled to individualized determinations of each [applicant's] eligibility for backpay." *Wal-Mart Stores*, 131 S. Ct. at 2560.  As a result, this Court must "conduct additional proceedings . . . to

determine the scope of individual relief." *Teamsters,* 431 U.S. at 361.  And, at that point USMS will have an opportunity to "demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id.* at 362.  Given the discretion based system, that individualized inquiry will vary for each plaintiff foreclosing any claim that the named Plaintiffs claims are typical.

### c. Adequate Protection of the Class

Courts also recognize that the commonality and typicality requirements "also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. 157-58).  The Supreme Court in *Wal-Mart Stores* noted that the inquiry is whether the "class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  131 S. Ct. at 2551 n.5.  Here there is no question that the class cannot adequately protect absent class members in an efficient manner.  Unless each individual class members' claims of discrimination against *all* of their different Marshals, Assistant Directors, and Career Boards that are possibly the source of bias are asserted, the class cannot protect the

interests of the individual class members.  At this point where the class must do this, it is everything but economical.

Thus, the Court finds that Plaintiffs fail to meet the requirement of the adequate protection of the class.  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem*, 521 U.S. 625-26 (internal quotation omitted).  In evaluating whether a class representative will adequately protect the interests of the class members, the Court should consider "two principal requirements: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel."  *Nat'l Assoc. for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1458 (D.C. Cir. 1983).

Here the interests of the named Plaintiffs, and absent class members, will often conflict.  For example, for some positions in which potential class members were denied promotion, multiple women and EEO complainants applied.  If two plaintiffs are on the same Best Qualified List, they may each want to argue that they should have been promoted above the other.  And, in some cases -- such as Ms. Valerino's own promotion to a GS-13 position in 2011 --

43

a woman or EEO complainant was ultimately promoted.  In such situations, the Court will be unable to award all class members the positions for which they were denied, and the class representative will have a strong interest in seeking favorable relief for himself or herself by arguing the merits of her own promotion.  Accordingly, these conflicts of interest further undermine class certification.

For these reasons, the Court finds that Plaintiffs proposed class falls well short of the 23(a) requirements of commonality, typicality, and adequate protection of the class.  As a result, it declines to address the issues in this case with the numerosity, 23(b)(2), and the 23(b)(3) requirements.

C. Motion to Strike

Having denied the Motion for Class Certification, the Court finds that Defendant's Motion to Strike is moot.

**IV.  Conclusion**

For these reasons, the Court will grant Plaintiffs' Motion to Amend Complaint, deny Plaintiffs' Motion to Certify Class Action, and deny Defendant's Motion to Strike as moot.

An appropriate Order will issue.

```
                             /s/
                       _____
May 31, 2012                 James C. Cacheris
Alexandria, Virginia   UNITED STATES DISTRICT COURT JUDGE
```